IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| **LAMARIO STOKES**, Plaintiff, vs. **JANA HACKER** and **KAREN ANDERSON**, Defendants. | No. C15-3095-MWB **REPORT AND RECOMMENDATION** |

Currently before me is a referral (Doc. No. 21) from Judge Mark W. Bennett requesting a Report and Recommendation with regard to defendants' unresisted motion (Doc. No. 20) for summary judgment. Defendants ask that the court grant summary judgment and dismiss plaintiff Lamario Stokes' 42 U.S.C. § 1983 complaint. For the reasons that follow, I recommend that Judge Bennett do just that.

## I. BACKGROUND AND PROCEDURAL HISTORY

Stokes is currently an inmate at the Fort Dodge Correctional Facility (FDCF). He originally filed this case in the Southern District of Iowa, but Judge John A. Jarvey transferred the case to this district. Doc. No. 6. Judge Donald E. O'Brien then granted Stokes in forma pauperis status and appointed an attorney for him. Doc. No. 8.[1] Stokes' appointed counsel, Pamela Wingert, filed on an amended complaint (Doc. No. 11) on April 10, 2015. The defendants filed an answer (Doc. No. 15), followed by their currently-pending motion for summary judgment. Stokes did not file a resistance and the time for doing so has long passed.

---

[1] After Judge O'Brien passed away, the case was reassigned to Judge Bennett.

## II. FACTUAL FINDINGS

In his complaint, Stokes alleges that defendants Karen Anderson and Jana Hacker refused to treat his psoriasis properly. He contends that this alleged refusal has caused pain, bleeding and flaking over 95% of his body and that these conditions have lasted for 42 months. Because Stokes did not file a resistance, or any other document contesting the defendants' statement of undisputed material facts or presenting additional facts, there is no evidence of record that supports his claim.

The defendants are nurses who provide medical care at FDCF. Hacker is the nurse practitioner and Anderson is the head nurse. Their statement of facts relates exclusively to the issue of whether Stokes exhausted all administrative remedies.

The Iowa Department of Corrections (DOC) has a grievance policy that allows an inmate to register a complaint about any number of issues. Doc. No. 20-3 at 27-33. Pursuant to the policy, an inmate must file a grievance within thirty days of an incident/issue. The grievance process requires that an inmate must first seek informal resolution prior to filing an actual grievance. Then, any grievance filed will be investigated and answered by the grievance officer or other applicable prison official. An inmate may appeal that response to the Warden, or the Warden's designee, at the institution where the inmate is incarcerated. If dissatisfied with the grievance appeal response, the inmate may then take an additional appeal to the DOC. A response by the DOC will complete exhaustion of the administrative process. The grievance process is available to all inmates within the DOC, including FDCF. Dawn Fulton is in charge of the grievance process at FDCF. Fulton has kept a record of the grievances filed by Stokes since he arrived at FDCF in 2012, which are included in the defendant's Appendix. Doc. No. 20-3 at 34-42.

Stokes filed a total of three grievances while he was at FDCF. All three were medical in nature and chiefly dealt with his skin condition. In the first, Stokes requested a different medication for his psoriasis (the exact claim giving rise to his present suit).

The grievance was denied. In the denial, Fulton told Stokes that Hacker had prescribed topical ointment to treat his psoriasis and if Stokes felt further treatment was required he should talk to Hacker at an already-scheduled follow up appointment. Stokes did not appeal. However, a few days later Stokes filed another grievance, making the same claim. This grievance was not processed because it was duplicative of the prior grievance. A third grievance a few weeks later was not processed for the same reason. There is no evidence that Stokes appealed or otherwise followed the required procedures for either of the subsequent grievances.

### III. APPLICABLE STANDARDS

*A.     Section 1983*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, it creates no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393–94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred.");

*Graham*, 490 U.S. at 393–94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means section 1983 provides remedies for violations of rights created by federal statute and by the Constitution.). To state a claim under section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## B.  *Motions for Summary Judgment*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when " 'a reasonable jury could return a verdict for the nonmoving party' on the question. W*oods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## IV. DISCUSSION

Defendants argue that Stokes failed to exhaust his administrative remedies and his complaint should therefore be dismissed.

### A. *Unresisted Motion*

As stated above, Stokes failed (despite being represented by counsel) to respond to the defendants' motion. Local Rule 7(f) states:

> Unresisted Motions. If no timely resistance to a motion is filed, the motion may be granted without notice. If a party does not intend to resist a motion, the party is encouraged to file a statement indicating the motion will not be resisted.

Stokes also failed to request an extension or otherwise alert the court to his position on the motion for summary judgment. Nor did Stokes file a response to the defendants' statement of material facts or a statement of additional material facts. *See* N.D. Ia. L.R. 56(b). Accordingly, I could recommend Stokes' case be dismissed on that basis alone. However, before recommending such action, I must consider whether defendants have met their burden of showing that summary judgment is appropriate. *See Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (explaining that court must still determine that the moving party is entitled to judgment as a matter of law even if the nonmoving party did not oppose the moving party's contentions); *Johnson v. Boyd–Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981) (requiring court to "inquire into the merits of [a motion to dismiss] and to grant or deny it, as the case may be, in accordance with the law and the relevant facts"); Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion, … grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to

6

relief … or … issue any other appropriate order"). Accordingly, I will consider the merits of the defendant's motion.

## B.     *Failure to Exhaust*

"No action shall be brought with respect to prison conditions … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (stating that "exhaustion in cases covered by § 1997e(a) is now mandatory"); *Washington v. Uner*, 273 Fed. Appx. 575, 576–77 (8th Cir. 2008) (applying § 1997e(a)). Proper exhaustion of administrative remedies is necessary so that corrections officials are afforded the "'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter*, 534 U.S. at 525). While exhaustion is an affirmative defense that a defendant bears the burden of proving, a court may raise the issue of exhaustion sua sponte if it is plain on the face of the complaint that a grievance procedure is unexhausted. *See Jones v. Bock*, 549 U.S. 199, 214–16 (2007) (clarifying that a complaint cannot be dismissed sua sponte for failing to plead and prove exhaustion but failure to exhaust can be a basis for dismissal for failure to state a claim if the allegations in the complaint suffice to establish that ground).

As set out above, the grievance process in Iowa's state prisons has four steps. First, an inmate must informally try to resolve a dispute. Failing a direct resolution of the issue, an inmate must file a formal grievance. If the grievance does not resolve the situation, the inmate must appeal the grievance (actually the response to the grievance) to the Warden, or the Warden's designee, at the institution where the inmate is incarcerated. Finally, if the inmate is dissatisfied with the grievance appeal response, the inmate must take an additional appeal to the DOC. A response by the DOC will complete exhaustion of the administrative process.

Stokes' medical claim is simple. He states that he has psoriasis (a skin condition). The defendants prescribed a topical cream/anointment to treat the psoriasis, but Stokes thought that a different medication would be more effective. Based on the record, I will assume that Stokes informally tried to resolve the issue by discussing his psoriasis care with the defendants, which completed the first step in the grievance process. Stokes then took the next appropriate step by filing a formal grievance. *See* Doc. No. 20-3 at 34-36. However, when the grievance was denied, Stokes did not file an appeal. Rather Stokes filed a new set of grievances complaining about the same issue. *Id.* at 38-40. There is no evidence that Stokes ever completed the last two steps of the grievance process. Accordingly, even when the evidence is considered in the light most favorable to Stokes, he failed, as a matter of law, to exhaust his administrative remedies. I therefore recommend that summary judgment be entered in favor of the defendants.[2]

## V. CONCLUSION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the defendants' motion (Doc. No. 20) for summary judgment be **granted**, that this case be dismissed with prejudice and that judgment be entered in favor of the defendants and against the plaintiff.

Objections to this Report and Recommendation in accordance with 28 U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. See Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal

---

[2] Because defendants' motion for summary judgment does not address the merits of Stokes' deliberate indifference claim, I need not consider whether the record would support that claim if Stokes would have exhausted his administrative remedies.

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 18th day of November, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE